Case No. 23-795. We're losing our audience, okay? I should have asked the board a few questions. We're asking the court to reverse the dismissal of Mr. Drabinsky's complaint against the Actors' Equity Association, stemming from its lifetime ban of Mr. Drabinsky, which effectively ended his decades-long career as an illustrious Broadway producer. The district court's decision was based on... It did.  is to end Mr. Drabinsky's career. But it didn't. I'm just asking whether you're representing as a fact that was the end of his career. He's still hoping to get his career back, to continue to work on future productions. Now, Your Honors, this morning I'll try to focus on the antitrust claims, and specifically the key aspects of the statutory labor exemption, which turns on two issues. Number one, whether the union failed to act pursuant to a legitimate interest, and two, whether it combined with a non-labor group in effectuating... May I just interrupt you? As I understand the procedural history here, and I have not fully focused on this until fairly recently, there was an initial complaint  Is that correct? That's correct, Your Honor. And there was, in connection with that initial complaint, an issue with respect to diversity jurisdiction involving the state law claims. Is that also correct? That's correct, Your Honor. And this is sort of my spin. You don't have to agree or disagree with it necessarily. And in order to resolve this problem, this jurisdictional problem with diversity jurisdiction, the amended complaint introduced a federal antitrust claim. Is that also correct? That's a spin, but also a question. Your Honor, you're right. So first of all, I'll say I was not trial counsel, so I will say that the addition of the federal claim did confer federal jurisdiction under 1331. I don't want to necessarily agree with the spin, but this was... The spin is not a bad one. But you're right, Your Honor. Yes, the federal claims conferred federal jurisdiction. And so now the federal antitrust claim is before us. That's right, Your Honor. Whatever the motivation, it's not before us. Of course. And on that first issue, here the union failed to act pursuant to a legitimate interest in banning Mr. Drabinsky. Legitimate interests include working for wages, hours, working conditions, benefits, things like that. But Mr. Drabinsky alleges he was not responsible for those things and thus the union's decision... How was he not responsible when he is in charge and the organization receives a letter from his employed actors complaining about not being paid, complaining about harassment, complaining about the conditions of the work that these actors had to undergo? How is that not in the interest of the organization to protect not just the actors who complained but any future actors? I don't see how that doesn't fit squarely within what the role of an organization is. Yes, Your Honor. Understood. A few responses. First, he was not in charge of the production. He was the lead creative producer, but he was not involved in the business side of the production. He was not a signatory to any contract with the union. He was not signing checks, deciding who got paid, when they got paid, how they got paid. What about the harassment claims? They were directly leveled at him. Why doesn't the organization have a right to protect its members from that type of conduct? Well, I think, Your Honor, generally, yes, absolutely. The union has a right to protect its members. Two responses. First, when the union had prior grievances, it did not bring those against Mr. Drabinski. It brought those against the production company because it understood it was responsible for those things. I think another important point is that what prompted— But that doesn't answer my question, right? The letter was leveled against your client and his alleged harassment of the actors on this production. How does the organization not protect its members from that type of conduct? Yes, Your Honor. First, Mr. Drabinski disputes the facts of that. I think more importantly is whether that is why the union took this action. If you turn to page 123 of the appendix, this is the Hollywood Reporter article that was published the same day. They added him to the list. The union is quoted. A spokesperson is quoted. It provides a sole reason for adding Mr. Drabinski to the list. It says, quote, Darth Drabinski has made it clear that he is unable to uphold the terms of a union contract, so Equity intends to add him to our Do Not Work list immediately after. That's the only reason they gave, and he's not a signatory to any of those contracts. Let me ask you this. Does the statutory exception only apply if the union was correct that it was Drabinski who was responsible for the lack of pay? Absolutely, Your Honor. What if the, you know, can the union be wrong about that, and still the exception apply? I don't think so, Your Honor. Why not? The cases say it has to be a legitimate interest that the union is pursuing. And if you look at the Supreme Court's HA Artists' Decision, the court there, there were two challenge regulations. The second one is the franchise fee. And there the union tried to argue, well, this generally helps us administer the union business. The court said, hey, that's inadequate, and we don't have the facts on that. And so I don't mean to cut you off, Your Honor, but here if the sole reason they offer for cutting him off is false, by definition can't be true, we can't say that as a matter of law on a motion to dismiss. Not false, but wrong. It seems to me your position is, yeah, that falls squarely within what the union is to protect, but he didn't do it. They're wrong about that. So why doesn't the exception still apply? Because we can't determine whether they're acting pursuant to a legitimate interest. The question isn't whether they have some post hoc rationalization that they can resolve after discovery, after trial, which, again, is when most of the cases that address the statutory labor exemption resolve the issue. Because you start to see it's a fact intensive, messy two sides to every story. And if, again, by definition, he can't have breached any union contract, and that's the only reason they gave, it calls into question what their motive is. And if we don't even know what their reason was, and if we don't know that, we can't say as a matter of law. And I see my time is up, Your Honor. You can answer. Okay. Thank you. Okay, or you can stop this sentence. That's okay. We'll hear from the other side. May it please the court, my name is Jeffrey Kessler, and I'm here for the appellee actor's equity. This is really a simple case, and the reason it's simple is for precisely- Everyone says that at that podium, by the way. This is really a simple case. The question is whether it's a simple case and you win. That's true, Your Honor. That is absolutely true. Because putting someone on a do not work list is a core union activity, it's like a strike. It's right in the statute. It's in the language of the Clayton Act exemption that unions can urge people not to work for someone. So it's core activity. The issue becomes, does it matter that he claims he was wrongly put on the list? That is answered by the Supreme Court in United States v. Hutchinson. United States v. Hutchinson couldn't be clearer. It says the wisdom or lack of wisdom, the rightness or the lack of rightness is not an issue for the court. How about pretextualism? I think that that's the argument. That the reasons given here were, forget, set aside the wisdom, the justness, and so on. They were pretextual. Right. And that doesn't do it either because of the Hunt case in the Supreme Court. As long as it is concerted action that involves a labor dispute over working conditions. There's no question. You read this complaint. This is a dispute over working conditions. Paragraph after paragraph is about CBA violations, unsafe work conditions, harassment. You just have to go through the complaints. It's about working conditions and it's a do not work list. The fact that there is a claim there was an ulterior motive, that there was personal animus. That was dealt with by the Supreme Court in the Hunt case. And what the Supreme Court specifically said there is that it doesn't matter if you're motivated by personal antagonism or personal spite or vindictiveness. That's what he's claiming. And the reason, again, is because the purpose of Congress in this statute was to take antitrust off the table for these types- I appreciate that, but let me just return to my question, which is in assessing at least the self-interest component of this test. It may be the case that a union, a labor organization, comes up with a pretextual argument or reason for saying that it's in our self-interest when, in fact, it is not. And that is the- I'm assuming, I'm not a labor expert, but I'm assuming that that can be a matter of dispute at summary judgment that becomes a factual matter of whether the stated reasons are pretextual. I don't think that what you just read to me answers that. To raise that issue, Your Honor, under the Twombly-Ickfau pleading standards, you would have to have a complaint that did not clearly indicate on its face that this was in fact a labor dispute over working conditions. That's what do- I'm just using, though, the defenses that it's- that's what they said, but the defenses- that wasn't the reason at all. I mean, the position of the plaintiff- that wasn't the reason at all. We had a personal dispute about a defense between our houses, and they're just using this- it had nothing to do with labor at all. What are you doing, though? On that issue, Your Honor, what does the union interest mean? It's not an inquiry into the subjective mind of the union. What it says is it has to relate to issues like working conditions. It doesn't matter if they're personally vindictive. That's Hunt. It doesn't matter if they have other animus in their mind. Does it relate to working conditions? This complaint, if you read it, talks about claims of harassment, claims of unsafe working conditions, claims of lack of compensation. In fact- So you're suggesting that we don't really have to- well, you may be suggesting two things. One is that there's already a ready-made framework that was set out by this report in this area to consider the possibility of a pretextual explanation. The other is that we don't have to deal with this framework because the allegations in this very complaint, maybe for the reasons that we discussed at the beginning of Mr. Haskamp's argument, make it clear that it's not pretextual. Exactly. I'm not saying there's not a possible case where you could have a well-pled complaint alleging non-union interests motivating an action. I can imagine such a complaint. This is not that complaint. And the importance of this, and this is in the AFL-CIO amicus brief, if the standard is so liberal that all you could say is that it's pretextual, I don't agree with their analysis, I'm not the employer, they were wrong, then you've taken away the whole benefit that Congress intended, put its narrow unions into a very expensive antitrust case with full discovery and all the other problems, which is not what Congress intended by this exemption. And that's why it specifically said- So if you, so, and this is hypothetical, hypothetical. And I understand that it is not this case. So don't fight the hypothetical, please. So if you had a slimmed-down version of this complaint that did not, for example, have allegations that one could reasonably conclude meant that Mr. Drabinski had some role in the contracts, had some role in casting and so on, had some measure of control, and that did not have allegations that, in your view, make it clear that this was fundamentally a labor dispute. If you had that at a motion-to-dismiss stage, which is where we are here, it could be the case that a motion-to-dismiss would not succeed because the question of whether it's a core labor dispute and the question of pretext are still open questions. Is that right? Yes, Your Honor. There could be such a case. This is not this case. And it's funny because if you compare their brief with the complaint, it's like night and day. If you read their brief, you know, there's virtually no mention of all of these working condition issues, CBA issues, others, because now on appeal they're trying to distance themselves from their complaint. But this is already a complaint that's been amended. It was amended in a situation where the district court's local rules said, if you have anything else to amend, tell me now, and they said no. So at this point, they have to live with their allegations, and their allegations established this as a labor dispute. And so all that I am concerned about is some limit. So if someone, producer, whatever, comes in and has a very narrow complaint that says I was put on this list and there's no labor dispute, no nothing, what happens then? Does the union, is that an affirmative defense? How does it work? So the defense requires, is it a defense of the union? It requires two elements. That one, that the conduct be engaged in in the interest of the union, which means related to working conditions. And two, that there not be non-labor parties who are involved in that, which I don't believe is- I'm just trying to understand. On the face of most complaints, maybe not this one, that's the subject of the dispute. I imagine that none of this information will be on the face of the complaint. And then what does the union, does the union answer? Does that necessarily go to summary judgment? They would still, the burden of showing, I'm sorry, I should have said this. The burden of showing the exemption doesn't apply is on the plaintiff. That's clear under the case law. So the plaintiff would have to plead facts to raise this, that it doesn't apply. So could there be a case? Yes, let's say someone said, I've had no dispute with the union. We've had no labor unrest. We've had no claim of CBA violations. But my wife has been in a battle with the wife of the head of the union. And pleads those facts and said, based on that, they have now put me on a do not work list. And there's nothing about a labor dispute. I imagine there could be such a case. I don't think most unions would engage in that conduct. But you can imagine a case. But absent a claim like that, when you're going after strikes, do not work lists, the core things in the statute, then you have to plead facts to raise it to get out of it. This is obviously not relevant to this particular case. I'm just curious. Is there a mechanism for somebody who gets put on one of these lists to win their favor back to be off the list or some administrative proceeding or process by which they can challenge being placed on the list or later being taken off if they show some, I don't know, training, something. So that's each union can have its own policies. I've heard them allege it's permanent. The union hasn't said. It's permanent. So it's not a lifetime ban? They haven't said that. They just put them on the list. I can tell you people come off all the time because frequently the reason you're on a do not work list is you didn't sign a CBA. If you didn't sign a CBA, you come off the list. So I can't predict what will happen in the future, but there's no factual determination by the union this is a permanent ban. But there's no formal process that you're aware of? No, I think, again, this isn't in the record and I actually don't know, but I think he would just apply and say in some way. We have no, that is the second circuit, has no clear precedent on this issue. Is that right or wrong? That would be correct. You have to look to the Supreme Court authority or other circuits. There are a lot of district court cases around there. We cited in footnotes six of our brief. There's the Perry case from the Southern District of New York that's somewhat dated, right? Yes, that's correct. That's correct. But you're right, there's very little second circuit authority. I'm sorry, what did you say? Second circuit or Supreme Court? There's very little second circuit authority on this particular issue. How about Supreme Court? Supreme Court, yes. Hutchinson, Hunt, H.A. All those cases I think you put those together give you the answer to this. Okay, thank you. Mr. Haskin. Thank you, Your Honor. You're absolutely right. The rule that they're requesting really would be, there would be no limit. It would be virtually impossible for any party to bring an antitrust claim against a union. And that's a pretty radical departure from the Supreme Court precedent. All these cases we're talking about, virtually all of them, survived a motion to dismiss. They got to, principally they got to trial. There were findings of fact. And here, we think about this. Mr. Dubinsky, going to the detail in his complaint, he should be credited for telling the full story, for discussing things, discussing what he was responsible for and what he wasn't responsible for. Disputes that related to him, disputes, most of them did not. All of which were incredibly helpful for, potentially, for his state law claims. And became, I don't know, somewhat less helpful for his antitrust claims. Right or wrong, Your Honor. We're not running from any of the allegations. This is what happened. And here, the union added Mr. Dubinsky, the same day they say the cast wrote this letter. They did it without any investigation. They did it without any due process. And the only reason they gave, they didn't argue about this other stuff. This hostile work environment or people weren't getting paid. Because those are things that others were responsible for. They just said, Mr. Dubinsky reached a union contract. But they know, you didn't hear any contract he signed. Because he didn't. He sent a signatory to any of those union contracts. And so, how can we say that, as a matter of law, on a motion to dismiss. Well, there are allegations, it seems to me, throughout the complaint. If you look at page 39, it's just in that middle range. That strongly suggests that he had some not insignificant measure of control over the contractual arrangements involving cast members. Would you agree with that? No, Your Honor. He certainly, as a creative producer, interacted with the cast. Of course, you would. And, again, that goes to this point that it would be hard to envision a scenario where any claim against the union could survive. But 56, I think, in particular, paragraph 56, specifies some of the things he did he was not responsible for. What about the harassment? Even if we were to assume that he had no involvement whatsoever in not paying the actors. What about the conditions, working conditions, and harassment? Are you saying he had no involvement in that? I'm saying those are just- He himself admitted, gave some explanation for some of his conduct, why it wasn't harassment. So you can't say that he wasn't directly involved in that conduct. And that is cited as one of the reasons to put him on the list. It's not, Your Honor. Again, the single reason they gave is that he breached the union contract. That's page 123. They don't say this other stuff. And on the harassment, he would dispute it. He wanted to acknowledge that complaints were made about the production company or him. But some were not true. Some were resolved. And I think at the very least, those are questions I shouldn't- The problem for you is he would dispute it, puts it into a labor dispute, then puts it into an exemption. So it's a little bit of an odd for purposes of motion to dismiss. But once you say he would dispute it, that's a labor dispute. I think he would dispute the existence of it, Your Honor. And so if he disputes that it was harassment, then any action they're taking to resolve it- You see the problem with that? Well, I do, Your Honor. But it's, I think, a problem that should have been resolved, summary judgment or trial. Thank you.  Thank you, Your Honor.